UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Roscoe Chambers, | ) | |
|       Petitioner, | ) | |
| | ) | No. 19 CV 50331 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| Andrew Ciolli,[1] | ) | |
|       Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

Petitioner Roscoe Chambers seeks restoration of 27 days good conduct time that he lost for tampering with a safety device. For the reasons that follow, his petition [1] and [6] is denied. His motion for a report on the status of his case [16] is denied as moot.

### BACKGROUND

Mr. Chambers is an inmate at AUSP Thomson. He is serving a 360-month sentence after being convicted of multiple federal drug offenses in the Southern District of Iowa. *See United States v. Roscoe Chambers*, Case No. 12 CR 71 (S.D. Iowa). According to the Bureau of Prisons website, his projected release date is August 19, 2038.

Mr. Chambers lost 27 days good conduct credit after an incident on June 3, 2019, at his earlier facility, USP Lewisburg. According to a Bureau of Prisons incident report, Officer D. Eroh heard a banging noise coming from the direction of Mr. Chambers' cell, and then noticed an alarm sounding and red light blinking on the lock box for Mr. Chambers' cell. Dkt. 7-2 at 5. Officer Eroh silenced the alarm and proceeded to Mr. Chambers' cell, from which the officer could still hear the banging sound. *Id.* When the officer arrived, Mr. Chambers said he had been kicking his cell door to get the officer's attention because he had a grievance. According to the incident report, Officer Eroh told Mr. Chambers that inmates could kick their cell door only to alert an officer that the inmate was in distress or having an emergency, both of which Mr. Chambers denied. *Id.* According to Mr. Chambers, at the time he was suffering mouth pain caused by stitches from an earlier dental procedure, that he had reported his continuing pain to staff members including his counselor, but that nobody offered him any relief. Reply [9] at 2; Dkt. 7-2 at 9

The incident report asserted that Mr. Chambers had violated Prohibited Act Code 208, which prohibits "[p]ossession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damage any security device, mechanism, or procedure." Table 1 Prohibited Acts and Available Sanctions, Bureau of Prisons Program Statement 5270.09, Dkt. 7-4 at 48.

---

[1] The warden of AUSP Thomson is now Andrew Ciolli. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as the defendant to this suit.

Based on the incident report, Mr. Chambers appeared for an initial hearing before a Unit Disciplinary Committee the same day as the incident, June 3, 2019, and the UDC then referred the charges to Disciplinary Hearing Officer Brian Chambers (no relation to the petitioner) for a hearing held June 17, 2019. In a written decision, the disciplinary officer found that based on the greater weight of the evidence, Mr. Chambers had "kicked the cell door with such force that it caused the red alarm light and audible alarm to activate . . . to indicate the cell door is not securely locked." Dkt. 7-2 at 10. The hearing officer therefore concluded that Mr. Chambers had committed the prohibited act of interfering with any security device and sanctioned him as follows: 27 days loss of good conduct time and 120 days loss of commissary and telephone privileges. Dkt. 7-2 at 10.

In a petition filed under 28 U.S.C. § 2241, Mr. Chambers seeks the return of his 27 days good conduct time credit. In support, he argues that he was denied good time credits without due process because (1) he was not allowed to present witnesses during his disciplinary hearing; (2) the facts do not support the disciplinary hearing officer's decision; (3) the disciplinary hearing officer was not qualified to make the medical determination that his pain was not serious and not an emergency; (4) the disciplinary hearing officer was biased against him; and (5) his hearing before the UDC was conducted by one, not two, persons in violation of Bureau of Prisons regulations. The petition is now fully briefed.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good time credits, and can challenge the loss of good time credits by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v.. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record supporting the disciplinary decision. *See Henderson v. U.S. Parole Com'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court, but the requirement is not jurisdictional and so is waived if not raised by

the defendant. *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). The defendant concedes that Mr. Chambers exhausted his administrative remedies. Response [Dkt. 7] at 5.

Before focusing on the four ways in which Mr. Chambers contends he was denied due process, the Court first addresses his argument that defense counsel violated 28 C.F.R. § 50.15 by responding to his petition, and so the response should be disregarded. Specifically, he contends that defense counsel did not obtain authorization from the United States Attorney General to appear for the defendant. In fact, the regulation allows the Attorney General "or his designee" to decide whether to represent a federal employee. *Id.* Other than Mr. Chambers' bald assertion, he points to no evidence that defense counsel's appearance is unauthorized. The Court has no reason to believe that counsel appeared without authorization, or to address the argument further.

### 1. Witnesses

First, Mr. Chambers argues that the defendant denied him due process by refusing him an opportunity to present witnesses at his disciplinary hearing. Although he does not specify the names of those witnesses in his petition, according to the written decision of the disciplinary officer, Mr. Chambers had sought to present testimony from Warden Ebbert, Associate Warden Colbert, and Nurse Shoemaker. According to Mr. Chambers, those witnesses would have testified that within 20 minutes of the incident, he was taken to a dentist who removed his stitches, treated him with antibiotics, and gave him ibuprofen for his pain. Dkt. 1 at 5. However, the disciplinary officer declined to call the witnesses because none of those "witnesses were present at the time the incident occurred" and the testimony Mr. Chambers hoped to get from them "could not reasonably be expected to lead to a conclusion inmate Chambers did, or did not, commit the prohibited act." Dkt. 7-2 at 9.

While *Wolff* establishes that due process entitles a prisoner to present witnesses at a disciplinary proceeding, it does not entitle the prisoner to "call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Mr. Chambers sought testimony from those witnesses to corroborate that he was experiencing pain at the time of the incident, lest staff would never have rushed him off to the dentist for immediate treatment. But according to the disciplinary officer's written decision, Mr. Chambers himself testified that "[r]ight after I got the ticket (incident report), Klose called the dentist. They took me over and took the stitches out of my mouth and gave me antibiotics." Dkt. 7-2 at 9. Thus, the additional testimony from Mr. Chambers' witnesses would merely have been repetitive of the evidence Mr. Chambers himself provided. Since even Mr. Chambers does not contend that the witnesses were present at the time of the incident, he has not established what other relevant testimony they might have presented.

Accordingly, Mr. Chambers has not established that the disciplinary officer's refusal to call his witnesses denied him due process.

### 2. Sufficiency of the Facts

Next, Mr. Chambers contends that he was denied due process because there was no evidence before the disciplinary hearing officer that he tampered with his cell door, a locking device, or a security device, but there was evidence that he "was in pain and the Dentist performed a medical procedure on Chambers, so Chambers did not kick on the door fals[e]ly." Dkt. 1 at 6. As already discussed, a disciplinary decision will be upheld as long as there is any evidence in the record to support it. *Henderson*, 13 F.3d at 1077. The disciplinary hearing officer here had before him evidence that Mr. Chambers kicked his cell door, which set off visible and audible alarms. He also noted that at the hearing, Mr. Chambers did not dispute that account of events. He therefore had some evidence that Mr. Chambers tampered with a security device.

However, Mr. Chambers contends that he was justified in kicking his cell door because "the incident report clearly states that inmates must kick on the cell door if they have a medical emergency or are in distress." Dkt. 1 at 6. Mr. Chambers contends that the disciplinary hearing officer did not review the evidence that he was in pain, and was therefore justified in kicking his cell door. To begin, the disciplinary hearing officer did not ignore evidence of Mr. Chambers' reports of pain, or that shortly after the incident a dentist treated him for his pain. Rather, the hearing officer discounted the evidence and relied instead on the report of Mr. Chambers' statement at the time that he was not in distress of experiencing an emergency. The disciplinary hearing officer also concluded that even if Mr. Chambers was in pain at the time, "[m]outh pain secondary to a dental procedure" would not justify committing the prohibited act.

On review of a prison disciplinary decision, a court does not reweigh the evidence or determine credibility. *See Meeks*, 81 F.3d at 720. This record contains some evidence to support the disciplinary hearing officer's decision, and therefore Mr. Chambers has not established that he was denied due process because of an insufficiency of evidence.

### 3. Expertise

In a related argument, Mr. Chambers contends that the disciplinary hearing officer lacked the medical expertise to determine that his mouth pain was not the type of medical emergency or distress that would justify kicking his cell door. Both parties have referred to a policy that allowed inmates to kick their cell doors if they were in distress or experiencing a medical emergency, but neither side has pointed the Court to the source of that policy. For what constitutes distress or a medical emergency, both the disciplinary hearing officer and government rely on the Bureau of Prisons Program Statement 6031.04 on Patient Care, which identifies the types of services the Bureau offers, including "Medically Necessary – Acute or Emergent" services for "[m]edical conditions that are of an immediate, acute or emergent nature, which without care would cause rapid deteriorating of the inmate's health, significant irreversible loss of function, or may be life-threatening." *See* Bureau of Prisons' Program Statement 6031.04 on Patient Care (Dkt. 7-5 at 6) But the disciplinary hearing officer and government never explained why that is the relevant definition, while Mr. Chambers never addresses that definition or takes issue with it.

To the extent a policy exists that allows inmates to kick their cell doors if in distress or suffering a medical emergency, Mr. Chambers has not established that testimony from a medical expert was required to determine that he suffered either of those conditions, whether defined by Program Statement 6031.04 or under the plain meaning of those words. The disciplinary hearing officer acknowledged Mr. Chambers' reports of his mouth pain, and the fact that shortly after the incident Mr. Chambers received treatment from a dentist to relieve him pain. But the disciplinary hearing officer found more convincing the reports of Mr. Chambers' initial denial that he was in distress or suffering an emergency. This is some evidence that supports the disciplinary decision, and the evidence does not require expertise to accept.

### 4. Bias

Next, Mr. Chambers contends that he was denied due process because he was denied an impartial decisionmaker. Specifically, he contends that the disciplinary hearing officer retaliated against him because of several other lawsuits he filed against the warden and other disciplinary hearing officers, although the only lawsuit he identified was *Chambers v. Ebbert*, No. 18 CV 1009 (M.D. Pa.). Prison staff who adjudicate disciplinary proceedings are entitled to a presumption of honesty and integrity, and so the standard to establish bias is high. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Although due process would forbid a staff member who was involved in the incident from presiding over a disciplinary hearing into that incident, a hearing officer is not deemed biased just because he or she was involved in another of the inmate's disciplinary proceedings. *Id.* at 666-67. The Court takes judicial notice that the disciplinary hearing officer involved in the instant case, Brian Chambers (no relation), is not a party to the Pennsylvania lawsuit, and Mr. Chambers has not identified any evidence that Brian Chambers was in any way involved in or even knew about that lawsuit. Mr. Chambers has offered no other basis for finding that his decisionmaker was biased, and therefore has not established denial of an impartial decisionmaker.

### 5. UDC

Finally, Mr. Chambers contends that the defendant denied him due process when the UDC conducted a hearing with just one member, in violation of 28 C.F.R. § 541.7(b), which requires two. According to § 541.7(b), the "UDC ordinarily consists of two or more staff." However, according to the implementing instructions for § 541.7(b) in BOP Program Statement 5270.09, "[o]nly one unit staff member is required to hold an initial review when the incident report is required by policy to be referred to the DHO," or Disciplinary Hearing Officer. Incidents involving Greatest or High Severity Prohibited Acts are automatically referred to the DHO, *see* 28 C.F.R. § 541.7(a)(4), and tampering with a security device is among the High Severity Level Prohibited Acts, *see* Table 1 Prohibited Acts and Available Sanctions, Bureau of Prisons Program Statement 5270.09, Dkt. 7-4 at 48. Because Mr. Chambers' incident report involved a High Severity Prohibited Act, the UDC consisting of only a single staff member could refer the disciplinary proceeding to the DHO.

## CONCLUSION

For the reasons given, Mr. Chambers petition [1] and [6] is denied, and this case is closed. Mr. Chambers is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Chambers need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

To the extent one is required, the Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. Mr. Chambers cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of his § 2241 petition. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2), and *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Date: March 5, 2021         By:   _____
                                  Iain D. Johnston
                                  United States District Judge